## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BECKY'S BRONCOS, LLC,<br>JAMES BROAD, and<br>REBECCA MCCRENSKY,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF NANTUCKET and<br>NANTUCKET SELECT BOARD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:24-cv-11308-AK |

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMARY INJUNCTION

**ANGEL KELLEY, D.J.**

Plaintiffs James Broad, Rebecca McCrensky, and Becky's Broncos, LLC ask this Court for an immediate temporary restraining order and preliminary injunction for the length of the litigation enjoining Defendants from enforcing Bylaw Chapter 58 against Plaintiffs. For the following reasons, the Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

## I.   BACKGROUND

In 1988, the Town of Nantucket ("Nantucket" or "Town") adopted Bylaw Chapter 58 ("Chapter 58") [Dkts. 1-2; 1-3 at 2], which grants Nantucket the power to enact bylaws regarding the annual licensing of motor vehicle rental agencies and the payment of fees for those licenses. [Dkt. 1-3 at 1]. In 1997, the Town amended Chapter 58. Nantucket adopted the amendments at the annual Town Meeting on April 14, 1997, which the Attorney General's Office approved.[1]

---

[1] Plaintiffs contend that the Attorney General's Office ("AG's Office") did not approve the Chapter 58 amendments. [Dkt. 17 at 1]. Although the AG's Office did not explicitly approve the amendments to the bylaws, the AG's Office

[Dkt. 1-4 at 1, 2].  The amendments to Chapter 58 set a cap on the number of rental vehicles available for lease at 700.  [Dkt. 1-6 at 2].  The amendments also divided the available Rental Vehicle Medallions ("medallions") to the rental agencies operating on Nantucket at the time, based on the number of rental cars each of the agencies listed on their 1996 applications.  [Id.]. Medallions are transferable "with or without consideration, to any other rental agency or entity." A transfer can be made at any time and is effective upon written notice to the Nantucket Select Board ("Select Board"), the town's official licensing authority.  [Id.; Dkt. 14-7 at 3].  As of 2023, there were 692 medallions assigned to six rental car agencies: Affordable Rentals of Whitman, Inc., Nantucket Car Rental, Nantucket Island Rent-A-Car, Nantucket Windmill Auto, Young's Bike Shop, and Hertz Rent-A-Car ("Hertz").  [Dkt. 1-1 at 29].

In 2023, Plaintiff James Broad ("Broad") and his wife Plaintiff Rebecca McCrensky ("McCrensky") opened a car rental business, called Becky's Broncos, LLC ("Becky's Broncos"). [Dkt. 1 ¶ 3].  Although Broad and McCrensky are Nantucket residents, Becky's Broncos has its principal office in Chelmsford, Massachusetts.  [Id.].  Plaintiffs allege that in March 2023, they applied for a license and medallions to operate their car rental business, but Nantucket never responded to their application.[2]  [Id. ¶ 26].  Broad and McCrensky nevertheless went ahead and operated Becky's Broncos in Nantucket and rented out two Ford Broncos, in apparent violation of Chapter 58.  [Id. ¶ 27].

---

took no action on the bylaws, which take effect if the AG's Office fails to act.  [Dkt. 1-4 at 1].  By failing to act, the AG's Office tacitly approved the amendments to Chapter 58.  See also M.G.L. c. 40, § 32.

[2] Based on the record, it is unclear whether Plaintiffs actually applied for a license or medallions in 2023.  In an October 2023 email from Plaintiffs to the Licensing Administrator, Amy Baxter, Plaintiffs noted that they had begun the process of purchasing medallions from Nantucket in March of that year, and as support for this statement, attached a screenshot of an email dated March 29, 2023.  [Dkt. 1-8 at 8-9].  The March email, however, is not an application for a license or medallions.  Rather, it is an automated email confirming that Plaintiffs submitted an online form requesting information about car rentals.  The purpose of submitting the form was "to register with the Town of Nantucket for updates and information on Rental Car Agency Licensing and Medallion availability."  [Id. at 9].

On September 27, 2023, the Select Board voted to direct the Nantucket Police Department ("NPD") to begin enforcing Chapter 58.  [Dkt. 14-8 at 2].  The following day, the NPD individually contacted Becky's Broncos and three other businesses, Nantucket Classic Car Rentals, ACK Jeeps, and ACK Rentals, asking them to immediately cease renting and advertising vehicles on their respective websites until they obtained the appropriate permits and licenses pursuant to Chapter 58.  [Dkt. 1-8 at 1-4].  In his email to Becky's Broncos, Chief of Police William Pittman noted that Plaintiffs could reach out to Amy Baxter ("Baxter"), the Licensing Administrator, to discuss the process for obtaining the necessary permits and licenses. [Id. at 1].

Plaintiffs emailed Baxter a few days later, stating that they would like to resume the process of obtaining the appropriate licenses and medallions after having tried to do so in March 2023.  [Id. at 8-9].  Baxter pointed out that Plaintiffs had not applied for licenses in March 2023, but rather had submitted an informational request form.  [Id. at 7].  She added that there were no medallions available because Chapter 58 set a cap at 700.  [Id.].  Baxter also explained that the NPD licensing office was reviewing the administration of Chapter 58 to determine whether unused medallions could be taken back for the Select Board to redistribute, but that any changes to Chapter 58 were ultimately up to the Select Board.  [Id.].  Baxter then noted that Plaintiffs could submit a proposed bylaw amendment at a town meeting with ten verified voter signatures in support of the proposed amendment.  [Id.].

At the 2024 Annual Town Meeting in May, the Select Board introduced Warrant Article 64 seeking to amend Chapter 58.  [Dkts. 14-9; 14-14 at 2[3]].  The Town Meeting is Nantucket's

---

[3] The Annual Town Meeting can be viewed on the Town's YouTube channel, as mentioned in Dkt. 14-4 at 2.  See Town of Nantucket, Nantucket Annual Town Meeting 2024, Day 2, YOUTUBE (May 7, 2024), https://www.youtube.com/watch?v=v4uANkWOonk (introducing Warrant Article 64 at approximately 4:46:38).

legislative body.  [see Dkt. 14-13 at 2 (stating that "[t]he legislative powers of the Town shall remain vested in the Town Meeting open to all voters.")].  Article 64 would have expanded the definition of "Rental Vehicle Agency" in Chapter 58 to expressly include peer-to-peer car rentals on apps, such as Turo.[4]  [Dkt. 14-9 at 3].  It would also have established a process for the discretionary redistribution of unused medallions.  [Id. at 3-4].  Ultimately, however, voters at the 2024 Annual Town Meeting voted to refer the Select Board's Article 64 for further study, so Chapter 58 was not amended as proposed.  [Dkts. 14-1 at 2; 14-4 at 2[5]].

Plaintiffs also drafted a proposed amendment to Bylaw Chapter 58 titled, "Chapter 58: Equal Access to Rental Vehicle Medallions for New Local Small Businesses & Nantucket Residents." ("Article 65").  [Dkt. 14-10 at 2].  Plaintiffs' proposed amendment would have added 300 medallions, which would have been issued over the following three years; prevented anyone from holding medallions "inactively" for more than two years; and prioritized distribution and redistribution of available medallions to Nantucket residents and Massachusetts-based businesses holding less than fifty medallions.  [Id.].  The Finance Committee ("Committee"), which is not a final decisionmaker regarding Plaintiffs' proposed amendment, held a public meeting on January 8, 2024, and discussed Article 65. [Dkt. 14-14 at 2].  On February 5, 2024, the Committee unanimously recommended not to support Plaintiffs' Article 65.  [Dkt. 1 ¶ 31].  Consequently, at the 2024 Annual Town Meeting, Town Moderator Sarah Alger determined Plaintiffs' proposed amendment was insufficient to bring forward before the meeting.  [Dkt. 17-1 ¶ 7].  Although

---

[4] As Defendants point out [Dkt. 14 at 6 n.1], Turo is "an online platform that operates a peer-to-peer marketplace connecting [hosts] with [guests] seeking [rental] cars on a short-term basis."  Massachusetts Port Auth. v. Turo Inc., 487 Mass. 235, 237 (2021).
[5] See Town of Nantucket, Nantucket Annual Town Meeting 2024, Day 2, YOUTUBE (May 7, 2024), https://www.youtube.com/watch?v=v4uANkWOonk (voting to refer Article 64 for further study at approximately 5:12:00).

Alger proposed an alternative oral motion to generally amend the bylaw,[6] Plaintiffs "chose instead to focus [their] efforts on defeating the Town's proposed amendment, Warrant Article [64], at the Meeting."  [Id. at 1-2].  About a week after the Annual Town Meeting, Plaintiffs filed this lawsuit on May 16, 2024.

## II.   LEGAL STANDARD

The Court applies the same standard in assessing requests for temporary restraining orders as it does for preliminary injunctions.  Orkin v. Albert, 557 F. Supp. 3d 252, 256 (D. Mass. 2021).  "In considering a motion for a preliminary injunction, a district court must consider: '(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'"  González-Droz v. González-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008)).  "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor."  Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citing Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)).

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, to more effectively remedy discerned wrongs."  CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 620 (1st Cir. 1995).  Ultimately, issuing preliminary injunctive relief is "an extraordinary and drastic remedy that 'is never awarded as of right.'"  Peoples Fed. Sav. Bank v.

---

[6] It is unclear from the record whether Alger was making a general proposition or if she was suggesting Plaintiffs raise an oral motion at the Town Meeting because they were not allowed to present their proposed amendment to Chapter 58.  [See Dkt. 17-1 ¶ 7].

People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

## III.   DISCUSSION

### A.  Likelihood of Success on the Merits

While all four factors in considering a preliminary injunction must be weighed, "[t]he first two factors are the most important," González-Droz, 573 F.3d at 79.  "[I]f the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity."  New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).  Here, Plaintiffs raise eight claims, which the Court addresses in turn.

#### 1.  Dormant Commerce Clause Doctrine

Plaintiffs allege Chapter 58 has no reason for limiting the number of medallions except protectionism.  [Dkt. 10 at 6].  Consequently, Plaintiffs argue, Chapter 58 violates the Dormant Commerce Clause.  [See id.].  "Under the dormant Commerce Clause, if a state law has either the purpose or effect of significantly favoring in-state commercial interests over out-of-state interests, the law will 'routinely' be invalidated 'unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.'"  Walgreen Co. v. Rullan, 405 F.3d 50, 55 (1st Cir. 2005) (quoting Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999)).  A state policy is discriminatory if it "impose[s] commercial barriers or discriminate[s] against an article of commerce by reason of its origin or destination out of state."  C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 390 (1994).

When Chapter 58 was first adopted, the Select Board issued medallions to whichever rental agencies applied in 1996.  [See Dkt. 1-6 at 2].  Nothing in the record suggests that Chapter 58 was designed to favor in-state car rental agencies or that the Select Board would have only

issued medallions to in-state applicants if there had been out-of-state applicants besides Hertz. Plaintiffs, who bear the burden of proof on a motion for a preliminary injunction, have adduced no evidence beyond conclusory allegations that Hertz, "a Delaware-incorporated multinational car rental company," is a "token out-of-state business used as cover for the protectionist and discriminatory intent and effect of Bylaw Chapter 58." [Dkt. 1 ¶ 11]. Plaintiffs also ignore the fact that medallions are transferable to "any other rental agency or entity." [Dkt. 1-6 at 2].

The fact that the Town does not enforce Chapter 58 on Turo is irrelevant. When Chapter 58 was adopted and subsequently amended, applications such as Turo did not exist. Nantucket has not enforced Chapter 58 on Turo because the Town Counsel believed Turo did not fall under the definition of "rental agency" and expressed doubt that the Town could enforce Chapter 58 as to the peer-to-peer car rental app. [Dkt. 14-11 at 3; see also Dkt. 1-6 at 1 (defining "rental agency" under Chapter 58)].

## 2. The Antitrust Laws

Plaintiffs' second and third claims are brought under the Sherman Act and the Massachusetts Antitrust Act. In Count II, Plaintiffs claim Defendants violated § 1 of the Sherman Act for which they seek injunctive relief. [Dkt. 1 ¶ 63]. Section 1 of the Sherman Act prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. For a successful Section 1 claim, Plaintiffs must show "that the alleged agreement involved the exercise of power in a relevant economic market, that this exercise had anti-competitive consequences, and that those detriments outweighed efficiencies or other economic benefits." Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I., 373 F.3d 57, 61 (1st Cir. 2004).

However, the Sherman Act does not apply to anticompetitive restraints imposed by states "as an act of government."  Parker v. Brown, 317 U.S. 341, 352 (1943).  Because municipalities are not sovereign entities, however, they do not automatically qualify for state action immunity under the Sherman Act.  Rectrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 534 F. Supp. 2d 201, 203 (D. Mass. 2008).  State-action immunity only applies "to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition."  F.T.C. v. Phoebe Putney Health Sys., Inc., 568 U.S. 216, 226 (2013).  Here, the Massachusetts state legislature expressly granted Nantucket the authority "to enact by-laws requiring the annual licensing of motor vehicle rental agencies."  [Dkt. 1-3 at 1].  A state legislature does not need to expressly state that it intends for the delegated action to have anticompetitive effects in order for the legislature to pass the "clear articulation test."  Town of Hallie v. City of Eau Claire, 471 U.S. 34, 43 (1985).  "Rather, . . . state-action immunity applies if the anticompetitive effect was the 'foreseeable result' of what the State authorized."  Phoebe Putney Health Sys., 568 U.S. at 226-27.  The suppression of competition in the car rental industry in Nantucket is the foreseeable result of a state legislature allowing the town to enact bylaws requiring rental car agencies to pay for licenses to operate on the island.  Thus, Plaintiffs' claim under the Sherman Act most likely fails because Nantucket is immune from Sherman Act liability.  Because state action immunity shields Defendants from Plaintiffs' Sherman Act claims, the parallel state-law claim is not likely to succeed either.  See M.G.L. c. 93, § 7 ("No provision of this Act shall apply to (a) [a]ny activities which are exempt from any of the federal antitrust laws.").

### 3.  Federal Due Process

Section 1983 imposes liability on anyone who "under color of any statute," subjects any citizen of the United States to deprivation "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Plaintiffs argue that both their substantive and procedural due process rights were violated pursuant to 42 U.S.C. § 1983.  [Dkt. 1 ¶ 69].

#### a.  Procedural Due Process

A sufficient procedural due process claim must allege "that [Plaintiffs were] deprived of constitutionally protected property because of [D]efendants' actions, and that the deprivation occurred without due process of law."  Roy v. City of Augusta, Me., 712 F.2d 1517, 1522 (1st Cir. 1983).  "To qualify as a property interest, state law must give an 'individual a legitimate claim of entitlement to some sort of benefit.'"  Alvarado Aguilera v. Negron, 509 F.3d 50, 53 (1st Cir. 2007).  Here, Plaintiffs' procedural due process claim fails at the first step.  Plaintiffs do not have a protected property interest in a car rental license or medallion that was never transferred or issued to them.  Accordingly, Plaintiffs' procedural due process claim is unlikely to succeed on the merits.

#### b.  Substantive Due Process

Plaintiffs also raise a substantive due process claim, which they argue challenges a legislative action [Dkt. 17 at 5]; thus, the relevant standard is whether Chapter 58 has "a reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory."  Nebbia v. New York, 291 U.S. 502, 537 (1934).  In contrast, Defendants assert that the "shocks the conscience" standard applies here.  By granting Nantucket the ability to enact bylaws requiring the annual licensing of car rental agencies, the Massachusetts legislature granted the Town broad discretion in determining whether to grant or deny licenses and issue medallions.

For this reason, the Court agrees with Defendants that the "shocks the conscience" standard applies.  When challenging state or local decisionmakers' discretionary licensing determination, a plaintiff must demonstrate an "'abuse of government power that shocks the conscience' and a deprivation of a protected interest in life, liberty, or property.'"  Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001).

"[A]ny permit or license denial, no matter how unattractive, that falls short of being 'truly horrendous' is unlikely to qualify as conscience-shocking."  Pagán v. Calderón, 448 F.3d 16, 33 (1st Cir. 2006).  Executive acts that shock the conscience must be "truly outrageous, uncivilized, and intolerable."  Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).  "[T]he requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error."  Amsden v. Moran, 904 F.2d 748, 754 n.5 (1st Cir. 1990).

Once again, Plaintiffs' claim fails at the first step.  There are no "truly horrific" circumstances alleged here relating to Defendants' refusal to transfer or issue a license for Becky's Broncos.  Whether behavior is truly horrendous is often an issue of fact for a jury, but based on the record, it seems unlikely the alleged acts will be found to be sufficiently egregious.  See Pagán, 448 F.3d at 33 ("any permit or license denial, no matter how unattractive, that falls short of being 'truly horrendous' is unlikely to qualify as conscience-shocking.").  Even if the reasonable relation standard applied here, Plaintiffs do not appear to have a substantial likelihood of success on the merits, as Defendants have shown a proper legislative purpose for enforcing Chapter 58.  [See Dkt. 14 at 2-4, 19-20 (describing and discussing the Town's concerns and interests regarding parking, traffic safety, preservation of open space, and efforts to control the total number of vehicles on Nantucket)].

### 1.   Equal Protection

Plaintiffs also bring a selective treatment claim under the Equal Protection Clause based on race.  Such a claim requires proof that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or bad faith intent to injure a person."  Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citing Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989)).  An individual is "similarly situated" to others for equal protection purposes when "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."  Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001).

Plaintiffs allege they were treated differently because Broad is a first generation Black American.  [See Dkt. 1 ¶ 42 (stating that Plaintiffs are similarly situated to each of the rental car companies with medallions except that Becky's Broncos has its principal island not on Nantucket and that it is co-owned by a first-generation Black man)].  Plaintiffs point out that one of the three other businesses, ACK Rentals, that the Chief of Police asked to stop advertising car rentals was owned by a Black woman.  [Dkt. 1 ¶¶ 4, 29].  This is insufficient information to establish that ACK Rentals was similarly situated to Plaintiffs, as there is nothing in the record suggesting ACK Rentals applied for a license or medallions and was also unsuccessful in obtaining them.  Plaintiffs fail to identify others who were similarly situated; thus, Plaintiffs do not appear to have a substantial likelihood of success on the merits of this claim.

### 2.   Equal Right Claims

#### a.   Federal claim

Plaintiffs next assert a violation of the Federal Equal Rights Law under 42 U.S.C. § 1981. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a).  Section 1981 does not provide an implied right of action for damages against state actors, Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 733 (1989), but Plaintiffs can still seek injunctive relief.

To state a claim under Section 1981, Plaintiffs "must show (1) that [they are] member[s] of a racial minority, (2) that [Defendants] discriminated against [them] on the basis of [their] race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute."  Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).

Plaintiffs assert[7] that the only difference between Plaintiffs and the entities who do have licenses and medallions is that Broad is Black; therefore, Defendants discriminated against Plaintiffs for that reason.  [Dkt. 10 at 13].  As evidence, Plaintiffs point to an instance at the May 8, 2024, Annual Town Meeting in which a member of the Town Finance Committee, Peter Schaeffer ("Schaeffer"), stared at Broad and said, "Illegals, illegals, illegals . . . ."  [Dkt. 1 ¶ 4]. Schaeffer's bigoted remark is insufficient to assert Defendants discriminated against Plaintiffs. The Nantucket Finance Committee is responsible for investigating and making recommendations regarding all articles on the warrant of Annual and Special Town Meetings.  [Dkt. 14-12 at 2].  It is the Select Board, not the Finance Committee, however, that is ultimately responsible for

---

[7] The Court notes that only Broad has standing to assert this claim.  McCrensky is not alleging she was discriminated against based on her race, and Becky's Broncos is a corporation; thus, it has no racial identity.  Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 263 (1977).

granting licenses and deciding whether to issue medallions.  [Dkt. 14-7 ¶ 13-14].  Plaintiffs do not allege Schaeffer is a member of the Select Board or that he persuaded the rest of the Select Board to deny Broad a license or medallion based on his race.  For this reason, Plaintiffs are unlikely to succeed on the merits of this claim.

### b.  State claim

In Count VII, Plaintiffs claim that Defendants violated the Massachusetts Equal Rights Act ("MERA"), which is the state-law analog to Section 1981.  Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 74 (D. Mass. 2020).  Under MERA, everyone "regardless of sex, race, color, creed or national origin" has the "same rights enjoyed by white male citizens, to make and enforce contracts, to . . . purchase, to lease, sell, hold and convey real and personal property . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property."  M.G.L. c. 93, § 102(a).  Similar to their Section 1981 claim, Plaintiffs have not sufficiently alleged they were deprived of the "same rights enjoyed by white male citizens" regarding Defendants' alleged misconduct.  The first time the Town's Licensing Administrator, Baxter, even saw Broad was when he and McCrensky spoke at the Annual Town Meeting in May 2024.  [Dkt. 14-7 ¶ 20].  Nothing in the record suggests Defendants were aware of Broad's race prior to that event.  [See id. ¶¶ 15-20 (stating that Baxter did not know Broad's race until she saw him in person for the first time at the May 2024 Annual Town Meeting)].

### 3.  Massachusetts Public Accommodation Law

Lastly, Plaintiffs claim that Nantucket is vicariously liable for Schaeffer chanting "illegals" in Broad's face at the 2024 Annual Town Meeting, a place of public accommodation, in violation of the Massachusetts Public Accommodation Law ("MPAL"), M.G.L. c. 272, § 98.  [Dkt. 22 at 17].  Section 98 prohibits "discrimination or restriction on account of race, color,

13

religious creed, national origin . . . relative to the admission of any person to, or his treatment in any place of public accommodation . . . ."  M.G.L. c. 272, § 98.  Under the MPAL, a place of public accommodation is defined as "any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public . . . ."  Id.

As an initial matter, this Court must first determine whether a town can be held vicariously liable under the MPAL.  The Massachusetts Appeals Court recently found that "the doctrine of respondeat superior also applies to violations of [the MPAL], given the 'tort-like' aspects of the statutory claim."  Pettiford v. Branded Mgmt. Grp., LLC, 104 Mass. App. Ct. 287, 291 (2024).  "Given the nature and purposes of the statute," the court continued, "we see no sound reason why the general rules of agency liability would not apply to make the employer— the place of public accommodation—responsible for discriminatory actions of its employees, provided the employees were acting within the scope of their employment."  Id.  See also Brooks, 433 F. Supp. 3d at 73 (finding that Section 98 embraces vicarious liability).  Even though Nantucket may be held vicariously liable, Plaintiffs fail to establish that Schaeffer was acting within the scope of his employment.  Thus, it seems unlikely Plaintiffs would succeed on this claim either.

**B.  Risk of Irreparable Harm**

Although inability to show a likelihood of success on the merits is alone enough to deny the motion for a preliminary injunction, Plaintiffs have also failed to demonstrate that they would suffer irreparable harm absent a preliminary injunction.  Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004) ("[I]rreparable harm is a necessary threshold showing for awarding preliminary injunctive relief.").  Plaintiffs argue that if the Court does not grant their request for injunctive relief, Becky's Broncos "will fold, all goodwill will be lost, and the physical unity of

[Broad and McCrensky's] family will be disrupted during formative years of their children's lives." [Dkt. 10 at 2].

"'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005). To establish irreparable harm, Plaintiffs "must indicate the inadequacy of their remedy at law." Conlon v. Teamsters, Chauffeurs, Warehousemen & Helpers Union Loc. No. 25, 409 F. Supp. 1165, 1167 (D. Mass. 1976). No such showing has been made here because money damages would be an adequate remedy. Even though Plaintiffs would not be able to receive compensatory damages under the Sherman Act, see 15 U.S.C. § 35(a), they could still be awarded damages for their other claims.

Plaintiffs' assertion that a denial of their request for injunctive relief would cause "all goodwill to be lost" is speculative. As a new business that only operated for one season, the Court is doubtful Plaintiffs have established sufficient goodwill or a large enough customer base on Nantucket that is sufficiently immeasurable to constitute irreparable harm. Plaintiffs alleging irreparable injury must show more than a "tenuous or overly speculative forecast of anticipated harm." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).

Although unfortunate, the Court agrees with Defendants that the potential—or even likely—physical separation of Broad and McCrensky's family does not constitute irreparable harm. Rio Grande Cmty. Health Ctr., 397 F.3d 56, 76 (1st Cir. 2005) ("'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy."). First of all, it is not certain that Plaintiffs would suffer the predicted harm;

if Becky's Broncos were to shut down, Plaintiffs may nevertheless find employment on Nantucket.  Even if Plaintiffs were forced to seek employment off the island, that is an external factor not directly attributable to Becky's Broncos potentially shutting down.  This situation is similar to ones in which plaintiffs allege unlawful termination of employment and argue that subsequent issues constitute irreparable injury.  See Sampson v. Murray, 415 U.S. 61, 92 n.68 (1974).  ("[A]n insufficiency of savings or difficulties in immediately obtaining other employment—external factors . . .  not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual."); see also Together Emps. v. Mass Gen. Brigham Inc., 32 F.4th 82, 86 (1st Cir. 2022) (finding that loss of income and loss of benefits were "external factors common to most discharged employees.").  Consequently, Plaintiffs have not demonstrated an irreparable harm.

### C.  Balance of Hardships and Public Interest

Plaintiffs have failed to establish a likelihood of success on the merits, which essentially ends the inquiry.  See Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 973-74 (Fed. Cir. 1996) ("[A] trial court need not make findings concerning the third and fourth factors [of the preliminary injunction analysis] if the moving party fails to establish either of the first two factors.").  Nevertheless, it is worth noting that "the public interest would not be served by an order" asking Nantucket to selectively enforce its bylaws and allow [Plaintiffs], "in a hurry to capture the benefits of the [Nantucket] tourist season [and] to bypass local efforts" to curb traffic and noise on the island.  Leisure Time Cruise Corp. v. Town of Barnstable, 62 F. Supp. 2d 202, 211 (D. Mass. 1999).

**IV.     CONCLUSION**

For the foregoing reasons, the Court finds that it is prudent to maintain the status quo during the pendency of this litigation.  Plaintiffs' [Dkt. 9] Motion for a Temporary Restraining Order and Preliminary Injunction is **DENIED**.

**SO ORDERED.**

Dated: July 12, 2024                                        /s/ Angel Kelley
                                                            Hon. Angel Kelley
                                                            United States District Judge